versus Quest Diagnostics U.S. x-ray of Judd versus Quest Diagnostics. Quest Diagnostics U.S. x-ray of Judd versus Quest Diagnostics U.S. May it please the court. My name is Bill Leonard and I represent the Keaton-related Dr. James Judd. Dr. Judd filed a complaint under the False Claims Act against Quest Diagnostics in September 2010. We have facts knowing that he entered into those contracts with numerous other providers? We have facts knowing that he entered into those contracts with numerous other providers? We know because it's alleged in the complaint. No, no, no. We don't know because it's alleged in the complaint. What do you know? Dr. Judd called other providers of medical services in the area and they told him that they had similar arrangements with Crest and that's alleged in the complaint. It's not very specific. Tell me where because I don't see the specificity. The court does have some of the allegations but those are all things that were discussed in the Urbana case which is why the district court tossed them over to the original Crest auction. I'm sorry, Your Honor. I'm not sure I understood what the question was. Well, Paragraph 4 has a lot of allegations about what Crest is doing that would arguably come within a pre-TAM action. But all of those things go directly from or are related to the kinds of improprieties that were first brought to light in Urbana. And that's why the original source auction blew them out of the water as to the other non-HMA related claims. Your Honor, as to the original source standard, what had to be established pre-ACA amendments was that Dr. Judd had direct and independent knowledge of the information upon which his allegations were based. What was that direct and independent knowledge? If I understand you correctly, Dr. Judd filed false claims. And he spoke to other people, other providers that did the same thing. And they were filing false claims. How did they file those false claims? Your Honor, what happens here is that Crest sends a requisition form for supplies to a provider's office. The office checks off what it wants. Crest delivers those supplies. Those supplies are used by the provider to draw blood. And they're used for other purposes in the office beyond the blood draw. That service is then billed to a federally funded insurance program. By the other providers, by Dr. Judd and other providers? Undoubtedly so. That's how they get paid. Where does the false claim come in? The false claim there, Your Honor, is first of all that that claim is being made pursuant to a scheme that is giving the doctor gifts. And that is an illegal kickback. Why didn't they bill for those very items that they got free? They bill? The claim that they submit includes a component for the cost of the supplies that are used to draw your blood. The doctors didn't pay for those supplies. What is his direct and independent knowledge of that scheme? His direct and independent knowledge of that scheme is with respect to his own office claims? Or with respect to Crest's claims? He has withdrawn or the claims with respect to his own office have been dismissed. Is that accurate? That is correct. But that doesn't mean that evidence can't come in to explain the claims that were submitted, the direct knowledge and independent knowledge he has of the claims that were submitted by Crest. How does he know that they were submitting false claims? He knows in this way. He assumes that they were? No, he does more than assume, Your Honor. He receives free supplies. He uses the supplies. That's all I know. That's his. That's his. What we're trying to get at is take HMA out of the picture, which it is out of the picture, and I'm still looking for answers to why anything that you're discussing today wasn't disclosed in Urbanic, and therefore the public disclosure bar keeps you out of court on those non-HMA claims. And I would rest on the paper with respect to the public disclosure issues and focus on the original source issue, Your Honor. Because I think that he has direct and independent knowledge. But your allegations with respect to the non-HMA providers is his discussions with other providers demonstrate that Crest practices are not limited and they extend to other medical practices, JA57 paragraph 16. And he uses standard form, and the forms raise the presumption that the scheme was implemented on a much larger scale and was not limited. But this is all you have in the complaint that goes to what was happening with the other providers. Your Honor, we have more than that as a result of the brief that was filed by Quest. Quest has said in its brief that because it prevailed in the Urbanic case, it had no reason to change its behavior, and it continues to do what it did in the Urbanic case. But you can't rely on its brief to uphold the allegations of your complaint, unless you amend your complaint to include an admission or something that you've gotten from them. Your Honor, I do believe that the complaint is adequate and that it identifies or is based upon direct and independent knowledge of claims submitted by Quest. I mean, after the blood was drawn and HMA, Dr. Judd's office, was paid, the blood was sent over to Quest. That was the purpose of the whole arrangement. Okay, so you probably have a valid claim as to the HMA-related ones, but they've been dismissed. And there's nothing that really says, okay, he was doing this. In fact, we don't allow. He did it here, so therefore he did it here. We don't allow that kind of evidence. And you need hard allegations as to being an independent source for the non-HMA-related, it seems to me. Your Honor, I don't believe that the original source doctrine requires that the original source be able to identify specific false claims submitted by the defendant. I don't think there's been a case that has held that. I think that what is required is that you have direct and independent knowledge pre-ACA and post-ACA. Of what? The case that I am submitting false claims, I, HMA, Dr. Judd, therefore the others must have been submitting false claims also. Is that your position? Your Honor, there is evidence in the complaint. There is an allegation in the complaint that others have told Dr. Judd that that's what they were doing. In addition to those other practices, however, there's the claims that Quest submitted when he got the blood drawn by Dr. Judd's office, did the work, sent the results back, so we know that... He sent the results back to whom? To Dr. Judd's office. Okay, well then we're back to the HMAs. He sent it back to HMA, to Dr. Judd's office. Those are the things that have been dismissed. As to the other claims, it seems to me we're back to Urbanic, that there's already been a public disclosure of those other claims, the non-HMA claims. Whether or not there's been a public disclosure, and I submit that the allegations here are substantially different, that there hasn't been a public disclosure. Is it your argument that a regional source is an exemption from public disclosure? It is, Your Honor. In other words, either a public disclosure or you're the original source, is that...? That's correct. If you're the original source, it doesn't matter that there's been a prior public disclosure. But if we find that he wasn't an original source, you'd have to worry about the public disclosure part, do you not? I do, Your Honor, but with the limited time I had here today, I decided that I wasn't going to argue about that. It's well briefed. The positions are presented by both parties. How is he the original source as to Quest? He's the original source as to Quest. Not his companies, but the other companies. How is he the original source? He alleged, because he's right in the center of it, he owns his practice, he's the managing director of the practice, he knows the contracts with Quest, he knows that he gets contracts with Quest. Is it a matter of the false certification, the certifying that I did everything according to law, and your contention is that it wasn't according to law because there were kickbacks involved? That's correct. Is that...? That is... I was hoping you'd say that, not me. I don't want to put words in your mouth, but is that the essence of your claim against Quest? Yes, yes. That they certified falsely that they were in compliance with the laws. And they weren't. They weren't in compliance with the kickback statute. They weren't in compliance with Stark. So the blood goes over, they perform the work. That was the whole purpose of the business model, after all. And they send the results back to Dr. Judd's office. So the model worked. And so the question becomes, does he really need to now point to the specific claim that was submitted by Quest when all of that stuff is evident? And, by the way, the contract, which is in the joint appendix at 383, requires that Dr. Judd's office agree to provide all billing information required by third-party payers necessary for Quest Diagnostics to bill and collect from the third-party payers for services on your patients whose specimens are collected in your office. So that's with respect to him. Do we not have to have... This is fraud and false claims. Does there not have to be specificity with respect to his knowledge as to what's going on in the non-HMA Quest situations? Does there not have to be specificity in order to satisfy 9B? Your Honor, I think there is adequate specificity. With respect to the allegations of the business model here, that's the model. We know what he did with him. Maybe Quest thought, you know, here's a guy who, you know, we can get to do this stuff with us. That's the other weird thing is he's calling himself out for submitting false claims. How do we know that they actually got anybody else to really do this? That's the way they do business. They give free supplies. You can't just, with fraud, you can't just say that's the way somebody does business. This is based on something specific. It is based on something specific. It's based on the specific firsthand experience he has in his office, and that includes form contracts. That includes then his discussion in pursuit of an investigation with other providers of medical services. So you have independent knowledge of Quest giving other providers free medical supplies and medical equipment, and those providers, in exchange for the free stuff, referring work to Quest. You have independent information. That's one of the schemes that I think you're proposing. Yes, Your Honor. In the complaint, it is alleged that as Dr. Judd looked into this, he called other providers, and they told him that that is the way the arrangement is with Quest in their offices as well. They get free supplies. And we therefore send blood samples to that lab. Correct. Correct. I'm hearsay. Does the fact that it's hearsay affect your complaint? Knowledge must be direct. I asked you about independent knowledge, and you say. It is direct knowledge with respect to his practice. It is direct, I think, under the standard with respect to the submissions by Quest. I think he has adequately met the 9B standard to plead those claims by Quest, and I think it's adequate to satisfy the original source standard. Do you have direct knowledge of the certifications that Quest filed, certifications with respect to the Stark and the back statute? What we have is direct knowledge of the scheme, the fraudulent scheme, and what we also have is direct knowledge of the fact that Quest got the blood samples, that it performed the work, and I think all of those things are reliable indicia that it also submitted a claim. I think that's the FOBIA standard on the 9B test. Your Honors, I think that the False Claims Act was designed to permit people like Dr. Judd, who have information about fraudulent activity, to proceed as a private attorney general. We did understand your argument. I think you saved some time, didn't you, for your model? I did not. Okay, very well. Let's go over it a little bit. Well, I simply wanted to say, and I'll wrap up, that what the district court did was to undercut the purpose of the False Claims Act. It's not possible now, under the district court's holding, for any private attorney general to proceed against Quest in perpetuity because of a 15-year-old complaint. And I don't believe that was the intent. I believe the False Claims Act specifically allowed for circumstances where the government doesn't go forward, but the private attorney general can, and in this case tried. It was blocked by a 15-year-old complaint. Thank you very much. Thank you. Now we're going to be quick with you. Let's move a little bit. Mr. Posner. Good morning, Your Honors. May it please the Court? Ethan Posner for Quest Diagnostics. Judge Rendell, I think, stole my, what I'd hoped to be, opening thunder by noting the powerful point that the one part of this case that Judge Debevoise left open has been dismissed with prejudice. So the only part of this case that remains, of course, are Dr. Judge's allegations about other medical practices that he knew nothing about. He was never an employee at Quest. He has no insider or first-hand knowledge. It is based, as the Court noted, on speculation, information and belief, and I spoke to some other doctors. But isn't that sufficient, information and belief, or his own practice? He knows he has been cheating, and he has talked to other doctors and other providers and knows that they have been cheating also. Well, the first reason it's not sufficient is he's barred by the public disclosure bar, right, because the allegations about – No, no, we're beyond the public disclosure bar. We're now in the original source area. Okay, all right. Well, there's one case that most powerfully answers Your Honor's question, and that is the Supreme Court's decision in Rockwell, and they could not have been clearer on this point. What the Court in Rockwell said is – and it sliced the original source doctrine pretty finely, and it said if you're an original source about one issue A, about what was going on in the fourth floor of a company, you're not even an original source about what was going on in the fifth floor of the company. They sliced it really finely, that what Justice Scalia said in Rockwell is that the False Claims Act does not permit jurisdiction in gross, that just because you may be an original source about here, of course, your own medical office procedures, you are not, the Court was clear, an original source about essentially anything else. And what the original source language says – and I don't disagree that the test is largely the same, whether it's pre-ACA or post-ACA, but what the test is is direct and independent. And so then the question is, well, what does that mean? Well, what this Court said in Atkinson it means, and what other courts have said is just to be first-hand, you have to see something direct. Now, obviously, if you speak, I heard about it from other doctors. Of course, you would have to actually be in the other offices and see it unfold in order then to be an original source under your theory. Why isn't it enough for Dr. Judd to get the information directly from other providers? Well, I suppose there could be situations where that was true, but pledging on information – I mean, the courts are very clear that direct and independent means direct and independent. It means first-hand. It means you didn't get it from somewhere else. It means either you personally observed it or you were substantially involved in the issue yourself at these other offices. But he certainly has first-hand information of his own scheme. In other words, he knows how this works. Right, and those claims are dismissed with prejudice. So now he's saying – exactly, he's saying – I know those claims were dismissed, but in terms of the practice and in terms of how this fraudulent scheme works, he knows that. He has first-hand information. Just of what happened in his own office, and we do have, as Judge Rendell noted, the odd situation where he's saying, well, here's how things worked in my office. By the way, I submitted the false claims. He's not even saying that Quest directly submits it. I submitted the false claims myself. And you know what? That must have happened all over the place because – Well, he said the form of contracts. Yeah, I got the form of contracts, although the form of contracts themselves are obviously fine. There's nothing wrong with the form of contracts. That doesn't shed any light on the fraud allegation, which obviously we deny. But what Rockwell says is a prediction. He literally says a prediction is not direct and independent knowledge. You mean it's not enough for Dr. Judge to talk to another doctor, other provider, and the other provider says, you know, I got lots of gifts from Quest, and in return I sent them a lot of business. The answer to that question is no, although that is not even what we have here. And, of course, this problem underlies the 9B problem, right? I mean, the fact that he dismissed the claims for his own office, knowing there were remains of the claims for the other office, of course, that creates insuperable problems both for original source and 9B because now what he's left with, he's not even saying I know what really happened in these other offices. I know they got these lab tests. I know they ordered these supplies. I know they got these swabs. I know they got these hemocults. That's not what he's saying. He doesn't even have that level of detail. The problem on the 9B, Your Honor, is I don't even know what equipment was provided. I don't know what supplies were provided. I don't know what tests were ordered. I don't know anything. I don't even know whether Quest submitted any claims. I have no idea. I don't even know the names of the offices. So, I mean, and that's a problem that underlies the direct and independent problem. I mean, in some theoretical case that I think the court can write somewhat narrowly here to still affirm, I mean, I don't think the court necessarily has to draw some insuperable bright line that, you know, it has to be everything that you personally observed and you personally experienced, although I do think that's what the courts say. Could you touch on Dr. Judge Claims v. Quest? Quest's filing of certifications that they are in compliance with federal law. Well, A, there is no certification language at all in the record. I mean, he makes the generalized allegation, Your Honor. But isn't Quest required by law to certify that they are in compliance with the anti-kickback statute? It depends on the kind of claim that's been submitted. There's essentially very little in the record, Your Honor, on this. It really depends on the type of test that's being submitted. Okay? But just so we're clear, Your Honor, I think Your Honor understands this. The Public Disclosure Bar would bar the claim no matter what, but there is no evidence in the record, and that's the problem. I don't even know what the certification language is. This is a false claims act, right? And the courts have grappled and struggled with the question of what kind of certifications you really need under the False Claims Act, and that's occupied a lot of the court's time in other cases. I don't even know what the certification is in this case. I don't have the form. I don't know who submitted it. I don't know what the tests were. I don't know who made the certification. So, the answer is it's complicated and it depends on the kind of test and it depends on the form and it depends on Medicare and Medicaid. It really depends, and it's all over the map. But I don't have the answer to any of your questions because they're not in the complaint and they're not in the record. Yes. So, Levesky would be, I guess, the most pristine example of this kind of situation where you have information over there that was direct. Correct. But it's a new manifestation of the same fraud, but it's a new manifestation in a way that makes it materially different from that which was publicly disclosed before. Yes. I mean, Levesky, you had a relator who, I mean, you had a true corporate insider, right? You had somebody who was there for a long time and knew lots of different things and had firsthand and direct information. Levesky said, I know this about this issue. I know this about this issue. I know about this office. I know about that office. I know about all of these things. And that's why the court said, okay, your allegations really are different. And the test here is a fairly generous one. It's essentially, was it substantially similar to, you know, I mean, the test is fairly generous. And, obviously, if you compare, as your honors have done, the complaint in Urbanic, free supplies, swabs, kits, bandages, equipment, computer supplies, all that gets. False claims. False claims. Right. And he just says, well, I think that you gave all of this material, which we deny obviously was false, but you gave all of this material to these doctors and that induced them to write more. Now, one thing, sometimes what we grapple with on the public disclosure board, your honor, is that dreaded X plus Y equals Z formulation that you see in Atkinson and other cases. And I think what the courts are saying there is, look, you don't need Z. You don't need an allegation of fraud. It's enough if you have X plus Y, if you have the factual allegations from which you can infer fraud. Here we have both. Here we have Z. We don't always have, sometimes when I argue public disclosure cases, we don't always have X, Y, and Z. Obviously what we have in Urbanic is X plus Y. That is the same factual allegations about lab supplies and equipment. We also have, oh, and by the way, that was the same fraud theory that he repeated. And obviously in Hunter Labs, which we also contend applies, you also have the discounting allegations. On the original source with respect to other providers, do we have any allegation that, and, oh, not only were they doing these things, but they submitted false claims? I don't know that the allegation is even made. I'm not even sure the allegation is made. And if so, I have no idea who submitted it. Did Quest submit it? I have no idea. Did another office submit it? I don't know. Who did it? What was it for? What kind of supplies did they get? And obviously, look, I'll argue it. They may have been doing the same kind of thing of free this and that, but unless somebody submitted false claims, it's not covered. Exactly, Your Honor. And, I mean, the relator argues in their reply brief that what we're sort of asking for is immunity here, and obviously that's not the case. The United States, for example, can pursue this case. The public disclosure bar does not apply to the United States. The United States obviously investigated this case and declined to intervene. Well, one of your employees, one of Quest's employees who has direct knowledge. That was my second point. Exactly, Your Honor. That's the norm, isn't it? Exactly. That's the norm that, A, the Justice Department can enforce this. They're not barred by the public disclosure bar. And if you're an original source, you can do that, too. Right? If the public disclosure bar applies, you can get out from under the bar, as Judge Riddell and Chief Judge McKean noted. You can get out of that bar by being an original source. Or you can have something really different to say. I think what the relators are asking for is to inject a temporal requirement in a statute that doesn't exist. I mean, time can be relevant to show why the allegations are different, but you still have to show that the allegations are really different. And here, I think the standard is a relatively loose one on public disclosure. Actually, the way a lot of the courts handle this is they use what's called a quick trigger. You see this in the Seventh Circuit and Tenth Circuit cases. And I think what the courts mean by that is we're going to pay more attention to the original source issue. And I think this is the archetypal case where someone is not an original source and it is a straightforward application of the Supreme Court's decision in Rockwell, which is that we cannot permit jurisdiction in gross. I don't think an admission would be an original source. For example, Dr. Judd speaks to the doctors who said, you know, I did refer a lot of patients to the Quest Labs, and in exchange they gave me discounts. No, I mean, A, he has less than, and B, even that wouldn't be good enough, because it really does have to be firsthand and direct. You know, you really have to have a lot more information. Well, it has to be that we submitted false claims. Yeah, and it has to show we submitted false claims, and here's what the claims were for. I mean, the 9B problems also infect, and the lack of specificity and the, I'm pleading on information, really undercut the direct and independent agent. You really have to be inside them. You have to be inside them. You have to be in the room. I don't think the court has to write quite that broadly, but you have to have a lot more than obviously what you have here. You have to have a lot more detail. It is the Rockwell scenario. Yeah, exactly. It's the Rockwell scenario. And, you know, I don't think the court has to draw a bright-line rule that, look, if you're not in the room, I'm never going to, that's never enough. Maybe there could be situations where that could be the case, but you have to have the kind of granularity and detail, and you do have to have a lot of firsthand knowledge. There's no question about that, and matters about which you personally experience. Now, could you augment that with some documents that you got that flesh that out, even if you didn't write the document? Perhaps. But, you know, whatever corpus of information would be enough, Dr. Judd's original source information is obviously well short of that, and it's what Rockwell says, a prediction or a speculation that what happened in Situation A can be extended to Site B and Site C. That you cannot do, and we think that on the original source issue, this is a straightforward application of Rockwell. And, obviously, the same problems, in fact, on the 9B side, because, I mean, it's true that Judge Debevoise decided this before FOBIA, but he adopted a pretty tough standard. I mean, we asked him in the district court to adopt the standard that's better for defendants that have been adopted by several circuits, and he said no. And he, I think, anticipated correctly the court's distinctions in FOBIA, because he, of course, found that the HMA claims were sufficient under 9B, and those have now been dismissed with prejudice. And so what we're left with, you know, is the speculation and information and belief for the others. And so, you know, again, what do we not know? We don't know what types of equipment did these other offices get, what lab equipment did they get, what supplies were provided, what false claims were submitted, what offices were involved, what doctors. No, you don't, Your Honor. That's correct. I'm correct. Correct. Right. I mean, the court can obviously, and this is a threshold jurisdictional issue on which, of course, the relators bear the burden, and correct, Your Honor, you could easily rule that, look, it's a public disclosure, but you're not an original source, we're done. Okay? Obviously, to the extent that the court wants to get into the 9B issue, we don't even know what we don't even know. We don't know what kinds of tests were ordered. We don't know if they were false claims. Were you here for the first argument? I'm sorry? Were you here for the first argument? I was, Your Honor. Because if you don't know what you don't know, you're not being misled. Well, yes, except the difference here, Your Honor, is the relator is required to lay all of this out. I mean, obviously, the point is to allege fraud with particularity, and the point, of course, is to allege on the original source side the direct and independent knowledge. And if you don't know what you don't know, then don't make allegations against unenforced claims. You know, on these other lawsuits, I don't even know, you know, did Quest submit claims? I don't know what the claim forms are. And I think, Chief Judge McKee, maybe you remember the Fobley case, and you remember the inventory log. I mean, it sounded like maybe the court was struggling a little bit. I think the panel opinion might have called it a close call. But, of course, there we had an inventory listing out to specific vials and saying, well, there were only 29 vials. And, boy, you know, it looks like maybe you really were kind of double dosing there, and that's enough. And obviously, we don't have anything like that here, Your Honor. So if there are no further questions. Thank you very much, Your Honors. Thank you. Thank you, Your Honor. Well, thank you, Madam Advisor. Thank you, Counsel, for the argument. What we'd like to do is, the clerks and certainly me, and we're not hurrying counsel out of the courtroom. Why don't I take some time to just answer questions from the students, and hopefully we have not turned any of them off to law. You may have just converted a class of students to dental school here today. Let's see.